IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MONELETO D. GREEN, | ) |
| Petitioner, | ) NO. 1:04-0035 |
| | ) JUDGE HAYNES |
| v. | ) |
| JENNING JONES, Warden, | ) |
| Respondent. | ) |

## MEMORANDUM

Petitioner, Monoleto D. Green, filed this pro se action under 28 U.S.C. § 2254, seeking to set aside his state court conviction, based upon his guilty plea, for the sale of cocaine for which Petitioner received a three (3) years sentence with all, but thirty (30) days suspended and the remainder on probation. Petitioner asserts claim of ineffective assistance of counsel on his decision to plead guilty based upon his counsel's failures to investigate the facts and circumstances of the offense, to investigate the background of the State's confidential informant, and to provide Petitioner with reasonably competent legal advice on whether to plead guilty.

In earlier proceedings, this Court entered an order dismissing the claim of ineffective assistance of counsel without prejudice, as Petitioner's post-conviction claim remained pending in the state courts. All other claims were dismissed with prejudice due to procedural default. (Docket Entry Nos. 11 and 12). Petitioner filed an amended petition for writ of habeas corpus (Docket Entry No. 13) that was forwarded to the Sixth Circuit Court of Appeals on August 31, 2004, for review as a second or successive petition. (Docket Entry No. 14). On February 7, 2004, the Sixth Circuit entered an order remanding the case to this court for the filing of the petition and an evaluation on the merits. The Court appointed counsel for the Petitioner and the

current petition was filed. (Docket Entry Nos. 31 and 39). Respondent filed an answer. (Docket Entry No. 46).

Before the Court is the Petitioner's motion for summary judgment (Docket Entry No. 47), contending that the facts establish that his trial counsel did not conduct any investigation, including the criminal history of the State's confidential informant and that his counsel advised him to plead guilty without knowledge of material facts. Based on the Tennessee courts' rulings, the Respondent submits that the Petitioner has failed to meet his burden of proof and that a portion of his ineffective assistance of counsel claim is procedurally defaulted. Petitioner responds that, the Tennessee Court of Criminal Appeals fully addressed his ineffective assistance of counsel claims.

For the reasons set forth below, the Court concludes that Petitioner fairly presented his ineffective assistance of counsel claims to the state courts. The state court addressed his claim on the merits. Given the state court's findings and this Court's review of the state court record, this Court concludes that the decisions of the Tennessee courts denying relief are reasonable interpretations of the facts and Supreme Court precedents.

## A. Review of the State Court Record

### 1. Procedural History

In 2001, Petitioner was charged with two counts of sales of cocaine over 0.5 grams and one count of sale of a counterfeit illegal drug substance. Petitioner pled guilty on March 12, 2002, to one count of the sale of under 0.5 grams of cocaine, for which he received a three-year sentence suspended for all, but 30 days. Petitioner later filed his state post-conviction petition with claims that his trial counsel was ineffective for failure to seek a bond hearing and for forcing

2

Petitioner to accept a plea agreement. (Docket Entry No. 6, Addendum No. 2 at p. 5). After an evidentiary hearing, the trial court denied relief and on appeal, the Tennessee Court of Criminal Appeals affirmed. Green v. State, No. M2003-00998-CCA-R3-PC, 2004 WL 816744 (Tenn.Ct.Crim.App. Apr. 14, 2004). See also Docket Entry No. 6, Addendum 1. The Tennessee Supreme Court denied review on October 4, 2004. Petitioner did not seek further review of that decision.

## 2. State Court's Findings of Fact

In Petitioner's state post-conviction appeal, the Tennessee Court of Criminal Appeals made the following findings of fact.[1]

> Charged with two counts of sale of cocaine and one count of sale of a counterfeit substance, the defendant entered into a settlement agreement whereby the charges would be disposed of via his guilty plea to one count of sale of cocaine, and he would receive a sentence of three years as a Range I offender, to be served on probation except for 30 days of jail confinement. At the time of the plea, the defendant had accumulated enough jail credit that the net effect was his immediate release from confinement.
>
> Thereafter, the defendant became disenchanted with the disposition and filed this post-conviction action. He alleged that counsel had not adequately represented him in the earlier proceedings and that as a result, he had entered a guilty plea even though his true desire was to go to trial in order to demonstrate his innocence.
>
> The petitioner raised various other allegations in his pro se petition; however, he did not pursue those issues at the post-conviction hearing, and he has not raised them on appeal. We consider them abandoned.
>
> At the post-conviction hearing, the petitioner testified that his court-appointed attorney never met with him prior to the day he submitted his guilty plea. He claimed that counsel and he had not seen eye-to-eye because the petitioner wanted counsel to make efforts to have his bond reinstated and wanted to go to trial, but

---

[1] State appellate court opinion findings constitute factual findings in an action under 28 U.S.C. § 2254(e)(1). Sumner v. Mata, 449 U.S. 539, 546-47 (1981).

3

counsel simply pursued plea negotiations with the state. The petitioner claimed he realized the futility of trying to get counsel to pursue the strategies he was advocating, so he ultimately capitulated and accepted a plea agreement which would allow him to be released from jail. The petitioner claimed that he was confused and scared on the date of the plea hearing and that he did not recall some things that the transcript of the plea hearing reflected as having transpired. The petitioner denied knowing that the state's informant was an unreliable witness whom the state did not intend to call should the matter proceed to trial, and he denied having heard the prosecutor say so at the plea hearing. He claimed counsel had not explained the plea agreement to him and merely told him where to sign the plea document. With respect to the underlying charges in the conviction proceedings, the petitioner made much of the fact that he felt he had been entrapped by the informant, even though he admitted exchanging cocaine on two occasions and a counterfeit substance on a third occasion with the informant for money.

The petitioner's former counsel testified that he thought, but could not be sure, he met with the petitioner at the jail prior to the day on which the petitioner entered his guilty plea. He testified that during that jailhouse meeting, he told the petitioner that a motion to reinstate bond could be made at the next court date. Counsel admitted he had talked to an assistant district attorney but had not interviewed the informant or the police officer involved in the petitioner's cases. However, he claimed that this was not unusual at this point in the proceedings given that the petitioner had admitted twice delivering cocaine. Counsel testified that he talked to the petitioner about the facts of his case and the petitioner's defense theory. He conferred with the petitioner and an assistant district attorney several times and ultimately negotiated a plea agreement that was satisfactory to both the petitioner and the state. He explained the agreement to the petitioner. He likewise discussed the petitioner's prior convictions with him.

The transcript of the petitioner's guilty plea hearing was received as an exhibit at the post-conviction hearing. It reflects that the petitioner was advised of his rights, waived them on the record, and acknowledged understanding his plea and its consequences. It likewise reflects that the state's informant in the cases had credibility blemishes via convictions for tampering with and destroying evidence and robbery, and the state did not intend to call this witness should the petitioner exercise his right to trial.

At the conclusion of the post-conviction hearing, the lower court found that the petitioner failed to prove his claims by clear and convincing evidence. The court made specific findings that counsel's performance was adequate in the circumstances and that the petitioner's guilty plea had been knowing and voluntary.

4


\* \* \*

> Upon review of the record before us, we are not persuaded that the evidence preponderates against the lower court's determination that counsel's performance was adequate in the circumstances. The lower court accredited the testimony of counsel that he conferred with the petitioner about the facts of the case, defense theories, and the plea agreement. It likewise accredited the transcript of the plea hearing, at which the petitioner voiced understanding of the plea agreement and satisfaction with his attorney. The court discredited the petitioner's post-conviction testimony to the contrary. Such was its prerogative as the trier of fact. Thus, the petitioner has failed to carry his appellate burden of demonstrating error in the lower court's ruling in this regard.
>
> \* \* \*
>
> Having reviewed the appellate record before us, we are not persuaded that the evidence preponderates against the lower court's determination that the petitioner entered a knowing, voluntary, and understanding guilty plea. The evidence supports a conclusion that the petitioner, though initially desirous of going to trial, accepted an advantageous plea agreement which disposed of three pending charges with a single conviction of one lesser-included offense and which would allow him to be released immediately from confinement. The transcript of the plea hearing belies the petitioner's assertions that he did not understand the agreement and that he did not voluntarily enter into it. The petitioner acknowledged understanding the state's recitations of fact, which included the disclosure that the informant was unreliable and would not be called as a witness if the matter proceeded to trial. The court thoroughly inquired and informed the petitioner, and the petitioner voiced understanding and agreement. The lower court chose not to accredit the petitioner's testimony which conflicted with the other evidence adduced at the post-conviction hearing relative to the voluntariness of the plea, as was its privilege as the finder of fact. Upon review, we are not persuaded that the lower court erred in finding that the petitioner's guilty plea was voluntarily entered.

2004 WL 816744 at *2, 3 (emphasis added).

## B. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a

5

state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." In such instances, the Supreme Court held that a federal habeas court may grant a writ. Id. The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "the holdings as opposed to the dicta" of its decisions at the time of the state court decision. Id. at 412. Moreover, the relevant analysis is "to apply a rule of law that was clearly established at the time [the petitioner's] state court conviction became final." Id. at 390; accord, Joshua v. Dewitt, 341 F.3d 430, 436 (6th Cir. 2003). In Bell v. Cone, 535 U.S. 685, 693 (2002), the Court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, the Supreme Court stated that a state court judgment results in an "unreasonable application" of clearly established federal law "if the state

6

court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies [that principle] to the facts of the particular case." Id. at 694. The district court "must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 737-38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).

Yet, the Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," Williams, 529 U.S. at 409, and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "'state court decision is so clearly incorrect that it would not be debatable among reasonable jurists.'" Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

As to Petitioner's ineffective assistance of counsel claims, the Sixth Circuit identified two broad categories of ineffective assistance of counsel claims under the Supreme Court's decisions: (1) the actual or effective absence of counsel at a critical stage of the proceeding for which a presumption of prejudice arises; and (2) counsel whose performance was deficient on specific issues and that deficiency was demonstrably prejudicial to the defendant. Mitchell v. Mason, 325 F.3d 732, 740 (6th Cir.2003). As that Court explained:

> In United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court held that an appeals court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel

7

was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."... In <u>Williams</u>, the Supreme Court confirmed the vitality of this "per se" approach, noting that while the <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), test for ineffective assistance of counsel, requiring proof of deficient performance and prejudice, provides guidance for resolving virtually all ineffective assistance of counsel claims, there are "a few situations in which prejudice may be presumed." <u>Williams</u>, 529 U.S. at 391 (<u>citing</u> <u>Strickland</u>, 466 U.S. at 692, 104 S.ct. 2052). We have recently applied the presumption-of-prejudice test to a claim of ineffective assistance of counsel. <u>Olden</u>, 224 F.3d at 568 (prejudice is presumed when counsel is absent during prosecution's presentation of evidence that implicates defendant because such absence occurred during "critical stage" of trial).

<u>Id.</u>

Within the first category are three types of cases warranting the presumption-of-prejudice analysis:

> The first is the complete denial of counsel, in which "the accused is denied the presence of counsel at 'a critical stage.'" <u>Bell</u>, 122 S.Ct. at 1851 (quoting <u>Cronic</u>, 466 U.S. at 659, 104 S.Ct. 2039). The second is when counsel "'entirely fails to subject the prosecution's case to meaningful adversarial testing.'" <u>Id.</u> (quoting <u>Cronic</u>, 466 U.S. at 659, 104 S.Ct. 2039). The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance.

<u>Id.</u> at 742.

To prevail on any other claims of ineffective assistance, Petitioner must demonstrate that, under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performances were prejudicial. <u>Strickland</u>, 466 U.S. at 695. As the Supreme Court has explained:

> First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

8

Id. at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Included in the reasonableness of a counsel's performance is the duty to investigate. As to the duty to investigate, the Supreme Court in Strickland explained that:

> [t]hese standards require no special amplification in order to define counsel's duty to investigate. . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id at 690-91.

For a guilty plea, state trial courts are required to advise state defendants of his rights under the Due Process Clause of the Fourteenth Amendment to ensure a voluntary and knowing plea of guilty. Boykin v. Alabama, 395 U.S. 238, 242 (1969). The record should reflect a full

9

understanding of the direct consequences so that the plea represents a voluntary and intelligent choice among the alternatives. North Carolina v. Alford, 400 U.S. 25, 31(1970). Yet, the fact that the state trial court did not so inform the petitioner in the court's examination of the defendant at the guilty plea proceeding does not invalidate his plea under Boykin. "We agree with the other Circuits that Boykin does not require separate enumeration of each right waived and separate waivers as to each". Fontaine v. United States, 526 F.2d 514, 516 (6th Cir. 1976). Accord, Campbell v. Marshall, 769 F.2d 314, 317, 320-21 (6th Cir. 1985).

As pertinent here, the Constitution requires that a defendant be informed of the direct consequences of his plea. Brady v. United States, 397 U.S. 742, 755 (1970). While the maximum possible sentence is one such consequence, Riggins v. McMackin, 935 F.2d 790, 796 (6th Cir. 1991), eligibility for parole is not. Brown v. Perini, 718 F.2d 784, 788 (6th Cir. 1983); Armstrong v. Egeler, 563 F.2d 796, 800 (6th Cir. 1977). Counsel's expectation about the sentence are not grounds for invalidating the plea agreement. Stout v. United States, 508 F.2d 951, 953 (6th Cir. 1975), unless there was a gross error. Sparks v. Sowders, 852 F.2d 882, 885 (6th Cir. 1988).

When the Defendant's conviction is based upon a guilty plea, the question is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). As the Supreme Court stated:

> [W]e believe that requiring a showing of "prejudice" from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel will serve the fundamental interest in the finality of guilty pleas we identified in United States v. Timmreck, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979):
>
> "'Every inroad on the concept of finality undermines confidence in the integrity of

10

our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.'" Id., at 784, 99 S.Ct., at 2087 (quoting United States v. Smith, 440 F.2d 521, 528-529 (CA7 1971) (Stevens, J., dissenting)).

<u>We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett v. Henderson, supra, and McMann v. Richardson, supra. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.</u> In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.<sup>FN</sup>

> FN Several Courts of Appeals have adopted this general approach. See Thomas v. Lockhart, 738 F.2d 304, 307 (CA8 1984); accord, United States v. Gavilan, 761 F.2d 226, 228 (CA5 1985); Beans v. Black, 757 F.2d 933, 936-937 (CA8 1985); Mitchell v. Scully, 746 F.2d 951, 957 (CA2 1984); Evans v. Meyer, 742 F.2d 371, 374-375 (CA7 1984).

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, <u>where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.</u> Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., Evans v. Meyer, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually

11

> received"). As we explained in Strickland v. Washington, supra, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." Id., 466 U.S., at 695.

Id. at 58-60. (emphasis added).

Petitioner's counsel's testimony at the state post-conviction hearing was that the plea negotiations and plea agreement occurred on the day of the plea, before any independent investigation by him. (Docket Entry No. 44, Addendum No. 5 at pp. 53-54). Yet, Petitioner's counsel obtained and reviewed the indictment, warrants and related papers. (Docket Entry No. 44, Addendum 5 at pp. 53, 54). Although there were not any witnesses' interviews at the time of the plea, Petitioner's counsel learned that Petitioner made two admissions to the crime. (Docket Entry No. 44, Addendum 5 at p. 53).

During the plea discussions, the prosecution disclosed that the State's confidential informant had significant credibility issues and would not testify at trial. Petitioner expressed his desire to be released. Id. According to Petitioner's counsel, the primary reason for plea discussion was because Petitioner's bond had been revoked and he wanted to get out of jail (Docket Entry No. 44, Addendum No. 5 at p. 14). Petitioner repeatedly stated that the reason he pled guilty was because of his pre-trial incarceration. (Docket Entry No. 44, Addendum No. 6 at pp. 20-21). Petitioner's counsel was not counsel of record when Petitioner's bond was revoked. The result was a plea agreement that the Petitioner plead guilty to only one count in exchange for his immediate release for time served and extended probation. At his plea colloquy, Petitioner did not express any complaint about counsel to the state trial court nor move to withdraw his plea. The plea bargain actually accomplished Petitioner's express wish. Prior to this plea,

12

Petitioner had prior convictions for aggravated robbery and reckless endangerment. Id. at pp. 14-16.

Petitioner filed his state post-conviction proceeding challenging his plea only after he faced subsequent five or six aggravated robbery charges that based on his guilty plea at issue, increased his sentence range from 12 to 20 years, rather than 8 to 12 years. Id. at p. 18. Petitioner was advised at his plea hearing that the plea could result in a harsher penalty if he were later convicted of another offense. Id. at Attachment Plea Hearing Transcript at p. 5.

Petitioner argues that he would have not pled guilty if his counsel had investigated the State's case, including the informant's substantial criminal history. Petitioner insists that an investigation would have established that he was entrapped into these offenses. Petitioner also asserts that if his bond had been reinstated, he would have not pled guilty.

The Court finds first, that Petitioner's counsel discussed Petitioner's theory of defense, the range of punishment and the plea agreement. Id. p. at 47. Despite the lack of any personal investigation during the plea discussion, Petitioner's counsel had admissions from the State of its informants' substantial credibility problems and was aware of Petitioner's two incriminating statements about his involvement in these drug sales. (Docket Entry No. 44, Addendum 5 at p. 53). As to the facts of his entrapment defense, Petitioner testified that he had never met the informant for whom he agreed twice to travel from LaVergne to Nashville to purchase cocaine. Id. at pp. 40-43. For the third offense, Petitioner took the informant's money, but switched flour for cocaine. Id. at p. 42. These facts are not the earmarks of a successful entrapment offense.

As to the revocation of his bond, and whether Petitioner's pretrial detention impacted his decision to plead guilty, the trial court detained Petitioner after he did not appear with retained

13

counsel.. If Petitioner could not afford private counsel, Petitioner had a constitutional right to counsel provided by the State, Miranda v. Arizona, 384 U.S. 436, 478-79 (1966)). In addition, the Tennessee Constitution affords a defendant the right to bail in non-capital cases, TENN.CONST. Art. I, § 15, and Tennessee statutes define the standards for bail. TENN. CODE ANN. § 840-11-115 and 116. These statutes do not include any requirement for a defendant to retain counsel as a condition of bail. This Court concludes that Petitioner had a substantial claim to challenge his pretrial confinement that was solely because he could not afford to retain a private counsel. If this proceeding were Petitioner's first exposure to the criminal justice system, the Court may give credence to his contention that the denial of bond impacted his plea decision. Yet, Petitioner has two prior convictions for aggravated robbery and reckless endangerment, one of which was based on a guilty plea. Moreover, in his statements in his letter to the Court while in detention, Petitioner insisted that he would not plead guilty and wanted a jury trial. With these latter facts, the Court cannot conclude this confinement impacted Petitioner's decision to plead guilty.

From review of the state court record, the Court concludes that Petitioner's counsel provided services to secure the result that Petitioner wanted, immediate release from custody. Clearly counsel's performance was not within the scope of a reasonable counsel's performance for most cases, but given the cited circumstances of this case and Petitioner's expressed interests, the Court concludes that Petitioner was not prejudiced by his counsel's omissions. Any prejudice arises from Petitioner's subsequent offenses for which this conviction increases his sentencing range. The requirements for an investigation despite the Defendant's objection, arises in a capital sentence context. See Rompilla v. Beard, 125 S.Ct. 2456, 2462-63 (2005).

In the context of a guilty plea, "[w]hen a guilty plea is entered, the only required duty of

14

counsel in rendering reasonably effective assistance is to ascertain if the plea is entered voluntarily and knowingly.... The brevity of time spent in consultation with counsel does not, without more, establish ineffectiveness but instead is only a factor to be considered in the totality of the circumstances." Jones v. Parke, 734 F.2d 1142, 1146-47 (6th Cir. 1984) (quoting Carbo v. United States, 581 F.2d 91, 92-93 (5th Cir.1978)).

Based on the state court record, the Court concludes that the Tennessee Court of Criminal Appeals' decision was neither an unreasonable application of established Supreme Court precedent or an unreasonable determination of the facts in this case.

Accordingly, the Petitioner's motion for summary judgment should be denied and the petition should be dismissed.

An appropriate Order is filed herewith.

**ENTERED** this the __12th__ day of December, 2007.

_____
WILLIAM J. HAYNES, JR.
United States District Judge